CARPENTERS LOCAL 261 HEALTH
AND WELFARE FUND, Annuity Fund,
Education Fund, and Organization
Fund, Appellant,

v.

NATIONAL UNION FIRE INSURANCE
OF PITTSBURGH, PA. (Three
Cases.)

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1996.
Decided Dec. 20, 1996.

Robert D. Mariani, Scranton, for appellants.

John C. McGinley, Pittsburgh, for appellee.

Before COLINS, President Judge, and
DOYLE, McGINLEY, SMITH,
PELLEGRINI, FRIEDMAN and
KELLEY, JJ.

DOYLE, Judge.

Before this Court are the consolidated appeals of the Carpenters Local 261 Health and Welfare Fund, Annuity Fund, Education Fund, and Organization Fund (collectively, the Union Fund) from an order of the Court of Common Pleas of Monroe County denying the Union Fund's motion for summary judgment and granting the motion for summary judgment of the National Union Fire Insurance Company (National). Further, the Union Fund appeals an order of the Court of Common Pleas of Pike County likewise denying its motion for summary judgment and granting National's motion for summary judgment.

The relevant facts are as follows. Members of Carpenters Local 261 (Union) were hired by Lambert and Intreri, Inc. (Contractor), a construction firm, to perform labor on public works projects. In Pike County, Union workers were involved in the construction of the Pike County Jail, and, in Monroe County, they worked on the construction of

two schools. The Union and the Contractor entered into labor agreements which required the Contractor to, *inter alia,* make contributions to the several funds above listed. On the Monroe County projects, the Contractor agreed to make the following contributions to the funds for each hour of work performed by a Union member: Health and Welfare Fund, $2.40; Annuity Fund, $2.50; Education Fund, $0.15; and Organization Fund, $0.21. The Union and the Contractor entered into a similar arrangement for the Pike County construction project providing for the following contributions: Health and Welfare Fund, $2.55; Annuity Fund; $3.00, Education Fund, $0.20; and Organization Fund, $0.31.

After the Union members completed work on the construction projects, the Contractor filed for bankruptcy. As a result of Contractor's insolvency, benefit contributions to the Union Fund for the period from November of 1993 to March of 1994 were never paid by the Contractor. It failed to pay approximately $50,000 in contributions on the two Monroe County projects and approximately $17,000 in contributions from the Pike County work.

The Contractor and National, however, had executed a payment bond for each of the three projects pursuant to the Public Works Contractors' Bond Law of 1967 (Bond Law), Act of December 20, 1967, P.L. 869, *as amended,* 8 P.S. §§ 191–195. The terms of the payment bonds generally provided that the Contractor and National would be jointly and severally liable for unpaid labor and materials costs. Based on National's obligation under the payment bonds, the Union

Fund asked National to remit the unpaid benefit costs, but National refused. Thereafter, the Union Fund filed a complaint against National in the Court of Common Pleas of Pike County, as well as two complaints against National in Monroe County, all of which demanded judgment against National for the delinquent benefit contributions. National filed answers to all three complaints and asserted in new matter that the Union Fund's cause of action under the Bond Law was preempted by the Employee Retirement and Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (1985 & Supp.1996).[1]

The parties proceeded with discovery and filed cross motions for summary judgment in all of the cases. The Union Fund argued that it was entitled to recover the delinquent benefit contributions from National pursuant to Section 4(a) of the Bond Law, 8 P.S. § 194(a).[2] National argued that the Bond Law was preempted pursuant to Section 514(a) of ERISA, 29 U.S.C. § 1144(a), which provides, in essence, that state laws related to employee benefit plans within the purview of ERISA are preempted. Monroe County Common Pleas and Pike County Common Pleas each issued an order denying the Union Fund's motions for summary judgment and granted summary judgment in favor of National. Both courts concluded that the Bond Law was preempted by ERISA because the Bond Law related to an employee benefit plan. The Union Fund filed an appeal from each of those orders and those appeals were consolidated for argument before this Court.

---

1. Congress enacted ERISA to establish a comprehensive scheme to protect the interests of employees and their beneficiaries in employee benefit plans. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); Section 2 of ERISA, 29 U.S.C. § 1001. ERISA imposes participation, funding, and vesting requirements on pension plans, and establishes uniform reporting, disclosure, and fiduciary responsibility rules for pension and welfare plans. *Ingersoll–Rand.* To secure the rights protected by the statute, ERISA provides employees and beneficiaries with civil enforcement remedies and access to the federal courts. *Id.*

2. Section 4(a) of the Bond Law provides the following remedy to claimants seeking to recover monies on a payment bond:

   [A]ny claimant who has performed labor or furnished material in the prosecution of the work provided for in any contract for which a payment bond has been given ... and who has not been paid in full therefor before the expiration of ninety days after the last day on which claimant performed the last such labor ... may bring an action on such payment bond in his own name, in assumpsit, to recover any amount due him ... and may prosecute such action to final judgment and have execution on the judgment.

   8 P.S. § 194(a).

On appeal, the Union Fund contends that the trial courts (1) erred in holding that the Bond Law was preempted by ERISA, and (2) erred in denying its motions for summary judgment and in not concluding that National was liable under the payment bond.

### THE PREEMPTIVE EFFECT OF ERISA

Under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, federal law preempts state law in the following circumstances: (1) where Congress specifically defines the extent to which its statutes preempt state law; (2) in the absence of such language, when state law regulates conduct Congress placed into the exclusive control of the federal government; and (3) when state law actually conflicts with federal law. *English v. General Electric Co.*, 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990); *Baumgardner Oil Co. v. Commonwealth*, 146 Pa.Cmwlth. 530, 606 A.2d 617, *petition for allowance of appeal denied*, 531 Pa. 648, 612 A.2d 986 (1992).

Regarding the federal law under consideration here, Congress has expressly defined the extent to which ERISA preempts state law. Section 514(a) of ERISA states that it preempts "any and all State laws insofar as they may now or hereafter **relate to** any employee benefit plan" covered by that statute. 29 U.S.C. § 1144(a) (emphasis added). A state law "relates to" an ERISA employee benefit plan in the following circumstances:

A rule of law relates to an ERISA plan if it is specifically designed to affect employee benefit plans, if it singles out such plans for special treatment, or if the rights or restrictions it creates are predicated on the existence of such a plan. . . .

A state rule may be preempted even though it has no such direct nexus with ERISA plans if its effect is to dictate or restrict the choices of ERISA plans with regard to their benefits, structure, reporting and administration, or if allowing states to have such rules would impair the ability of a plan to function simultaneously in a number of states.

*United Wire, Metal and Machine Health and Welfare Fund v. Morristown Memorial Hospital*, 995 F.2d 1179, 1192–93 (3d Cir.) (footnotes omitted), *cert. denied sub nom. NYSA–ILA Welfare Fund v. Dunston*, 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 332 (1993).[3] In addition to the above, state laws which create causes of action that conflict with ERISA's civil enforcement mechanisms are also preempted. *Ragan v. Tri–County Excavating, Inc.*, 62 F.3d 501 (3d Cir.1995).

This Court recently encountered the issue of ERISA's preemptive effect in *Jay R. Reynolds, Inc. v. Department of Labor and Industry, Prevailing Wage Appeals Board*, 661 A.2d 494 (Pa.Cmwlth.1995). In *Reynolds*, the appellant argued that the Pennsylvania Prevailing Wage Act (Wage Act), Act of August 15, 1961, P.L. 987, *as amended*, 43 P.S. §§ 165–1 to 165–17, was preempted by ERISA because the Wage Act required the contractor make certain health and welfare contributions. The Wage Act establishes a minimum wage, which has both cash and benefit components, for workers on public construction projects. *See* 34 Pa.Code § 9.102. This Court rejected that argument, following the decision of the United States Court of Appeals for the Third Circuit in *Keystone Chapter, Associated Builders and Contractors v. Foley*, 37 F.3d 945 (3d Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1393, 131 L.Ed.2d 244 (1995). We determined that, because the preemptive effect of ERISA is an issue of federal law, it was appropriate to defer to the Third Circuit on that question.

The Third Circuit, in *Keystone*, applied the test articulated in *United Wire* and concluded that the Wage Act was not directly or indirectly related to ERISA plans and, thus, was not preempted. The *Keystone* court reasoned that the Wage Act did not relate to ERISA plans because, (1) no element of the Act is premised on the existence of an ERISA plan and such a plan is not necessary for the Wage Act to be meaningfully applied,

---

**3.** In *United Wire*, the Third Circuit held that the New Jersey statute designed to regulate hospital rates was not preempted by ERISA, even though it could increase charges for hospital services billed to ERISA plans, since the statute had no direct or indirect nexus with ERISA plans.

(2) the Wage Act does not encourage or restrain any kind of conduct toward ERISA plans, and (3) the Wage Act is an expression of the traditional power of the states to regulate wages. While the Wage Act had an incidental and insignificant impact on ERISA plans, the *Keystone* court determined that such impact was too remote to preempt the Wage Act.

In *Ragan*, the Third Circuit confronted the question of whether ERISA preempted an action by a union to recover delinquent fringe benefit contributions from an insurer under the terms of a payment bond. In that case, a contractor, working on a private construction project, became insolvent and filed for bankruptcy. The contractor was delinquent in paying $78,000 in fringe benefit contributions it was required to pay under the terms of a collective bargaining agreement negotiated with its union workers. The contractor, however, had executed a payment bond with the Hartford Fire Insurance Co., and after it became clear that the contractor could not pay the delinquent contributions, the union turned to Hartford for payment. Hartford refused to pay, and the union filed an action in the United States District Court for the Eastern District of Pennsylvania. After a bench trial, the district court entered judgment against Hartford. An appeal to the Third Circuit followed, raising the issue of whether the union's cause of action on the payment bond to recover delinquent benefit contributions was preempted by ERISA.

The *Ragan* court, applying the *United Wire* analysis, rejected Hartford's claim of ERISA preemption.[4] The Third Circuit rec-

ognized in *Ragan* that the action on the payment bond was not intended to affect employee benefit plans and did not single out such plans for special treatment. Moreover, the union's cause of action was not specifically predicated on the existence of an ERISA plan. The *Ragan* court stated:

> Here, the district court need only determine Hartford's obligations under the Bond. It need make no inquiry into the validity or status of the funds (or indeed whether they are ERISA funds), nor need it explore Hartford's motives regarding employee benefits. . . .

> Simply because sums collected may ultimately feed into an ERISA-governed fund does not in itself mean that the cause of action sued upon creates rights or restrictions which are 'predicated on' the existence of an ERISA plan.

62 F.3d at 511–12 (footnote omitted).

Further, in *Ragan*, the Third Circuit determined that the union's action on the payment bond did not conflict with civil remedies in Sections 502[5] and 515 of ERISA.[6] The court observed that Sections 502 and 515 of ERISA create remedies against **employers**, allowing interested parties to file suits against employers for failure to make pension or welfare fund contributions required by a collective bargaining agreement. The court determined that there could be no conflict between the union's common law action and ERISA's civil remedies, because an insurance carrier is outside the definition of "employer" in Section 3 of ERISA, 29 U.S.C.

---

**4.** The court presumed that the union was proceeding under common law as a third party beneficiary of the payment bond, and did not consider Pennsylvania's Bond Law.

**5.** Section 502 of ERISA provides in relevant part: ·

> **(A) Persons empowered to bring a civil action**
> A civil action may be brought—
> (1) by a participant or beneficiary—
> . . . .
> (B) to recover benefits due him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the plan;
> . . . .
> (3) by a participant, beneficiary or fiduciary
> (A) to enjoin any act or practice which violates

any provisions of this subchapter or the terms of a plan, or (B) to obtain any other equitable relief (i) to redress such violations, or (ii) to enforce any provisions of this subchapter or the terms of a plan.
29 U.S.C. § 1132(a).

**6.** Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
29 U.S.C. § 1145.

§ 1002(5),[7] and Congress did not intend to expand the definition of that term to include insurance carriers. Therefore, Hartford could not successfully claim that ERISA preempted the union's cause of action on the theory that the suit on the payment bond conflicted with an ERISA cause of action.

■ In the present case, the Union Fund argues that its suit under the Bond Law is not preempted by ERISA because the Bond Law makes no reference to ERISA plans and is not related to employee benefit plans or the enforcement of those plans. The Union Fund further argues that *Ragan* is virtually identical to the instant case and, based on that decision, we should reverse the orders of the Courts of Common Pleas of Pike and Monroe Counties. We agree and, for the reasons stated in *Reynolds*, will follow the reasoning of the Third Circuit in this matter.

The Union Fund correctly observes that the present case is nearly factually identical to *Ragan*. Like this case, *Ragan* involved a suit by union employee benefit funds against a surety seeking to recover unpaid benefit contributions under the terms of a payment bond. While *Ragan* did not discuss the Bond Law, applying the reasoning of that case, along with the reasoning in *United Wire* and *Keystone*, the inescapable conclusion is that the Bond Law is not preempted by ERISA.

The Bond Law was designed by the General Assembly to, *inter alia*, guarantee that workers and material providers involved in public works projects get paid and to make the execution of such a payment bond a prerequisite to the award of a public construction contract. *See* Section 3 of the Bond Law, 8 P.S. § 193. Our review of the Bond Law leads to the conclusion that it has no direct affect on ERISA plans. The Bond Law makes no reference at all to employee benefits or ERISA plans, is not specifically designed to affect employee benefit plans, does not single out ERISA plans for special treatment, and does not require an ERISA plan for the statute to be meaningfully ap-

plied. While monies could be claimed on behalf of an ERISA fund through a payment bond enforced under the Bond Law, that fact, by itself, does not mean that the Bond Law creates rights or restrictions predicated on the existence of an ERISA plan. *Ragan.*

Considering the above, it is clear that the Union Fund's cause of action under the Bond Law does not require a court to decide any ERISA issue. To resolve this case, the trial courts needed only to determine whether National, under the provisions of the Bond Law and the terms of the payment bond, was obligated to pay the Union Fund the delinquent benefit contributions. Those courts could resolve that question without inquiring into the validity or status of the benefit plans administered by the Union Fund or any other ERISA plan.

In addition, we are unable to discern an indirect relationship between the Bond Law and ERISA of any significance. Nothing in the Bond Law impacts on the choice, structure, reporting or administration of ERISA plans. Any indirect impact on ERISA plans by the Bond Law is no greater than the impact on such plans by the Wage Act, which, in *Keystone* and *Reynolds*, was held not to be preempted by ERISA.

National argues, however, that the Bond Law does relate to ERISA plans because it creates an alternative remedy to those contained in Sections 502 and 515 of ERISA for the recovery of unpaid benefits. The *Ragan* court, however, rejected the same argument. *Ragan* recognized that Sections 502 and 515 of ERISA create civil causes of action and remedies against **employers** and **persons acting indirectly in the interests of an employer** to recover unpaid benefits. *See* Footnotes 5, 6 and 7 *supra*. The court concluded that a surety is not an employer or a party acting in the interest of an employer for purposes of ERISA, and, thus, a law suit against an insurer for delinquent benefits cannot conflict with ERISA. The Court explained as follows:

7. Section 3 of ERISA provides in pertinent part:
    (5) The term "employer" means any person acting directly as an employer or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.
    29 U.S.C. § 1002(5).

Although it is true that the surety's services are often purchased by the employer in order that it may proceed with its business, the ultimate beneficiaries of that contract are the claimants on the bond. The surety does not stand in an employer relationship to the claimants, nor is it the agent of the employer.

*Ragan,* 62 F.3d at 512–13. Therefore; following *Ragan,* because National is not an employer or an agent of the Contractor, we conclude that the Union Fund's cause of action under the Bond Law does not conflict with remedies provided in Sections 502 and 515 of ERISA.

Accordingly, for the above reasons, we hold that the Union Fund's cause of action against National under the Bond Law is not preempted by ERISA and that the Monroe County Common Pleas Court and the Pike County Common Pleas Court erred in granting National's motions for summary judgment.

## NATIONAL'S LIABILITY ON THE PAYMENT BOND

■ The Union Fund contends that Monroe and Pike Common Pleas erred in denying its motions for summary judgment because National is obligated under the payment bonds to make the benefit contributions mandated by the contract between the Union and the Contractor.

To determine National's liability under the payment bonds, we must examine the terms of those documents, because it is the language of the bond itself that delineates the surety's obligation to a claimant. *Salvino Steel & Iron Works, Inc. v. Fletcher & Sons, Inc.,* 398 Pa. Superior Ct. 86, 580 A.2d 853 (1990), *appeal dismissed as improvidently granted,* 529 Pa. 62, 601 A.2d 806 (1992).

National and the Contractor executed different payment bonds for the Pike County and Monroe County projects. The payment bond for the Pike County project provides, in pertinent part, that

1. The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner [Pike County Com-

missioners] to pay for labor, materials, and equipment furnished for use in the performance of the Construction Contract....

. . . .

3. With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4. The Surety shall have no obligation to Claimants under this Bond until:

4.1 Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety ... and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

(Pike County Project Payment Bond at 2; Reproduced Record (R.R.) at 13a.) The Contractor and National executed two payment bonds for the Monroe County projects, both of which contain the following relevant provisions:

[T]he terms and conditions of this Bond are and shall be that if the Principal [Contractor] and any subcontractor of the Principal to whom any portion of the work under the Agreement shall be subcontracted, and if all assignees of the Principal and of any such subcontractor, promptly shall pay or shall cause to be paid, in full, all money which may be due any claimant supplying labor or materials in prosecution and performance of the work in accordance with the Agreement and in accordance with the Contract Documents ... for material furnished or labor supplied or labor performed, then this Bond shall be void; otherwise, this Bond shall remain in force and effect.

. . . .

As provided and required by [Section 3 of the Bond Law], the Principal and Surety agree that any claimant, who has performed labor or furnished material in the prosecution of the work in accordance with the Agreement ... and who has not been paid therefor, in full, before the expiration of ninety (90) days after the day on which such claimant performed the last of such labor or furnished the last of such materials for which payment is claimed, may institute an action upon this Bond, in the

name of the claimant, in assumpsit, to recover any amount due ... and may prosecute such action to final judgment and may have execution upon the judgment; provided, however, that: (a) any claimant who has [a] direct contractual relationship ... with the Principal may institute an action upon this Bond only if such claimant first shall have given written notice ... to the Principal within ninety (90) days from the date upon which such claimant performed the last of the labor ...; and (b) no action on this Bond shall be commenced after the expiration of one (1) year from the day upon which the last labor was performed ..., for the payment of which such action is instituted by the claimant....

(Monroe County, Pleasant Valley School Project, Payment Bond at 2–3; R.R. at 89a–90a.) (Monroe County, Pocono Mountain School. Project, Payment Bond at 2–3; R.R. at 166a–67a.)

There is no dispute that the Union Fund satisfied the notice requirements of the payment bonds. Moreover, the critical facts surrounding the construction contracts and the bonds, relevant to determining National's liability under the bond, are undisputed: (1) the Union and the Contractor had agreements for work on the construction projects; (2) the Union members performed labor on the construction projects; (3) after the labor was performed, the Contractor became bankrupt; and (4) the Contractor failed to pay benefit contributions to the Union Fund for a closed period of time as mandated by the agreements. Therefore, in order for the Union Fund to prevail, all that remains to be determined is whether the delinquent benefit contributions are within the scope of the payment bonds.

The payment bonds require National to cover the cost of **labor,** in full, when the contractor fails to do so. According to the agreements between the Union and the Contractor, the Contractor was obligated to pay the Union's workers wages and to make contributions to the Union Fund. Specifically, all of the project agreements contain the following language:

Employer agrees to be bound when working at the Project by all terms and conditions of the Collective Bargaining Agreement ... including but not limited to all wage rates and contributions to the Carpenters' health and welfare and pension funds....

(Pike County Jail Project Agreement at 1; R.R. at 10a.) (Pleasant Valley School Project Agreement at 1; R.R. at 86a.) (Pocono Mountain School Project Agreement at 1; R.R. at 163a.) As demonstrated by the agreements, it is clear that the benefit contributions were an integral part of the Contractor's cost of labor on the construction projects and, therefore, we hold that the contributions are within the scope of the payment bonds and must be paid by National.

The Union Fund served Requests for Admissions on National in all three cases, and National admitted to the facts in those documents, including the amount of delinquent contributions to the Union Fund. National admitted to the following delinquent contributions: Pike County Jail Project, $17,360.07 (Request for Admissions (R.A.) at 6; R.R. at 39a); Pleasant Valley School Project, $6,120.59 (R.A. at 6; R.R. at 117a); and Pocono Mountain School Project, $45,466.98 (R.A. at 6; R.R. at 194a). Hence, we will remand these cases to the respective trial courts for entry of judgment.

Accordingly, the orders of the Pike County Common Pleas Court and the Monroe County Common Pleas Court are reversed and the cases are remanded for entry of judgment against National in the appropriate amounts.

### ORDER

AND NOW, December 20, 1996, the order of the Court of Common Pleas of Monroe County and the order of the Court of Common Pleas of Pike County in the above-captioned matters are hereby reversed. These cases are remanded to the respective common pleas court for entry of judgment in favor of Carpenters Local 261 Health and Welfare Fund, Annuity Fund, Education Fund, and Organization Fund.

Jurisdiction relinquished.

McGINLEY, J., did not participate in the decision of this case.