Galen E. KISE, Petitioner,

v.

DEPARTMENT OF MILITARY AND VETERANS AFFAIRS and The Adjutant General of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2000.
Decided Sept. 28, 2001.

Wendy A. Nicolosi, Easton, for petitioner.

Michael C. Barrett, Annville, for respondents.

Before DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, SMITH, Judge, PELLEGRINI, Judge, FLAHERTY, Judge, and LEADBETTER, Judge

FLAHERTY, Judge.

Galen E. Kise's (Kise) filed a Petition for Review of his termination as a member of the Active Guard/Reserve (AGR) program.[1] The Department of Military and Veterans Affairs (Department) and the Adjutant General of Pennsylvania's (Adjutant General) filed a Motion to Dismiss. We deny the Department's Motion to Dis-

---

1. The AGR is defined as Army National Guard personnel serving on "full-time National Guard duty." 10 U.S.C. § 101(d)(6)(A). "Full-time National Guard duty" means training or other duty performed by a member of the Army National Guard of the United States in the soldier's status as a member of the National Guard of a State under Section 502(f), Title 32, of the United States Code. *Id.* § 101(d)(5).

miss and remand this matter to the Department for further action.

On May 25, 2000, Kise petitioned this Court to review the Department's decision to involuntarily separate Kise from the Active Guard/Reserve (AGR) program. The Department contends the Adjutant General's separation determination was a federal action beyond our jurisdiction because the Adjutant General was acting in his federal capacity, under federal regulation, to dismiss a federal employee and asks this Court to conclude that it lacks jurisdiction to consider this matter.[2] The Department's contention presents an issue of first impression in Pennsylvania. While this Court has previously exercised jurisdiction over an adjudication of the Department and the Adjutant General brought by a National Guard member, jurisdiction over the administration of the AGR program has not been addressed. *See e.g., Prewitt v. Department of Military Affairs,* 686 A.2d 858 (Pa.Cmwlth.1996). We conclude that this Court does have jurisdiction.

We first turn to whether a member of the National Guard in the AGR program is a federal employee as opposed to a state employee. We begin with a brief overview of the National Guard's dual status:

The Army and Air National Guard of the United States, collectively the National Guard of the United States (NGUS), are part of the "Ready Reserve," units whose availability for active duty are most relied upon. The NGUS receives all of its funding from Congress and forms an integral part of the total armed forces of the United States. To become a member of the NGUS, a person must enlist in, and be federally recognized as a member of, the National Guard of a particular state. Since 1933, all persons who have enlisted in a state National Guard unit have simultaneously enlisted in the NGUS. Under this "dual enlistment" system, guardsmen, when not on active duty in the NGUS, are state employees of their respective state National Guard units.

Maj. Michael E. Smith, *Federal Representation of National Guard Members in Civil Litigation,* Army Law. 42–43 (Dec.1995) (footnotes omitted). "[T]he members of the State Guard .... must keep three hats in their closets-a civilian hat, a state militia hat, and an army hat-only one of which is worn at any particular time." *Perpich v. Department of Defense,* 496 U.S. 334, 348, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990). The type of duty the member is performing determines which "hat" he or she has on:

federally funded ARNG training duty, referred to as "Title 32 duty," is ordered by the state governor and paid for with federal funds. This form of duty is used for weekend drills, annual training, and most schools and assignments within the United States. Most National Guard duty falls into this category. Conversely, "Title 10 duty" is duty ordered by the President or the Secretary of the Air Force under the authority of federal law and paid for with federal funds. This form of duty is used for basic (initial) military training, overseas training missions, and occasions when the Guard is called or ordered to active duty (mobilized) by the U.S. Government. ARNG members are not subject to the UCMJ

**2.** Kise filed with this Court an Application for a Stay from separation on May 31, 2000, which was granted. Kise filed a Petition for Adjudication of Civil Contempt and on August 1, 2000, following oral argument, the Contempt Petition was denied and the Stay was vacated. At the time, this Court cited "serious concerns regarding the Court's lack of jurisdiction over this matter."

unless they are performing Title 10 duty.

Maj. Grant Blowers, *et al.*, *Disciplining the Force Jurisdictional Issues in the Joint and Total Force*, 42 A.F.L. Rev 1, 8 (1997).

■ We conclude that Kise's status, while serving full-time National Duty under 32 U.S.C. § 502(f), was as a member of the State militia and not as a federalized soldier.[3] Given this status, Kise was a State employee. *See* A.R. 135–18, ch. 3–1.c. (June 19, 1996) ("Personnel of the ARNGUS serving an AGR tour under the provisions of 32 U.S.C. § 502(f)(2) . . . . serve in a State status.");[4] *Department of Military and Veterans Affairs v. Bowen*, 953 P.2d 888, 899 (Alaska 1998) (member serving in the AGR program was a state employee and subject to state National Guard statutes and regulations); *U.S. ex rel. Karr v. Castle*, 746 F.Supp. 1231, 1237 (D.Del.1990), *withdrawn in part*, 768 F.Supp. 1087 (D.Del.1991), *aff'd sub nom.*, *U.S. v. Carper*, 22 F.3d 303 (3d Cir.1994)

("The intent of Congress was, and is, that National Guard personnel serving in the 'Full Time Manning Program' now included in a DOD [Department of Defense] program called Active Guard and Reserve (AGR) serve under 32 U.S.C. § 502(f) in conventional National Guard status, *i.e.*, under State control as opposed to service in the active military service of the United States in Reserves of the Army or Reserves of the Air Force status."); H.R.Rep. No. 691, 98th Cong., 2d Sess. pp. 242, 243 (1984), U.S.Code Cong. & Admin.News 1984 pp. 4174, 4201–4201 ("The Congress has always intended that such personnel [National Guard personnel serving in a full-time duty status] should remain under the control of State National Guard authorities rather than the federal government."); Op. Comp. Gen. of the U.S., dated December 7, 1992, 1992 WL 373552 at *2 ("Thus, members of the Active Guard/Reserve ordered to duty under 32 U.S.C. 502(f) remain under the command and control of state authorities although they may be paid out of funds

---

**3.** We are not persuaded by the Department's argument that this is a federal matter because the Secretary of the Army promulgated the regulations concerning the AGR program. *See* 32 U.S.C. § 502(f). If we were to adopt this logic, then any time a National Guard member was performing his or her monthly drill or annual training, it would be a federal matter because this drill and training requirement is set forth in regulations promulgated by the Secretary of the Army. *See id.* § 502(a) (requiring drill and training of National Guard members under the regulations of the Secretary of the Army). Therefore, the officers and enlisted persons would be acting in their Army National Guard of the United States (ARNGUS) (federal) capacity rather than their Pennsylvania Army National Guard (PAARNG) (state) capacity anytime they regularly assembled. The Department cannot expect us to believe that National Guard members are implicitly "federalized" because Army regulations require them to drill. We

refuse to adopt an argument when logic compels an absurd conclusion.

**4.** Although repeated references and citations are made to Army Regulations (A.R.) and National Guard Regulations (N.G.R.), the only regulation provided to this Court was N.G.R. (A.R.) 600 5 (procedures for managing Army National Guard members participating in the AGR program, as promulgated by the Secretary of the Army). Other regulations were identified through independent research by this Court from references in the text of the regulations or appendices to the regulations. The applicable regulations were available from the Department of Defense through the Army Administrative Electronic Publications website at http://www.usapa.army.mil/index.html. Other regulations were available from the National Guard Bureau's Publications & Forms Library website at http://www.ngbpdc.ngb.army.mil/. *See also infra* at p. 264 discussing the incomplete record before this Court.

appropriated by Congress."). As the Supreme Court observed in *Maryland v. United States,* 381 U.S. 41, 48, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965), *remanded on other grounds,* 382 U.S. 159, 86 S.Ct. 305, 15 L.Ed.2d 227 (1965):

> It is not argued here that military members of the Guard are federal employees, even though they are paid with federal funds and must conform to strict federal requirements in order to satisfy training and promotion standards. Their appointment by state authorities and the immediate control exercised over them by the States make it apparent that *military members of the Guard are employees of the States,* and so the courts of appeals have uniformly held.

*Id* (emphasis added).

■ Next, we consider whether the Adjutant General was acting in a federal or State capacity. The Adjutant General is appointed by the Governor with the advice and consent of the Senate. 51 Pa.C.S. § 901(a). As the head of the Department, the Adjutant General is responsible to the Governor and the Commonwealth for carrying out all of the duties given or delegated to the Department. *Id.* § 902. The Department is responsible for "perform[ing] such duties and employ[ing] the power delegated .... by the laws of the United States and the rules and regulations promulgated thereunder." *Id.* § 702(2). Therefore, although the Department is responsible for administering federal regulations, it does so as a State agency. Hence, the Adjutant General is a state official. We must ascertain, however, in what capacity the Adjutant General

acted when he separated Kise from the AGR program (*i.e.,* was he wearing a state or federal "hat").

The Army regulations cited by the Department as providing a basis for Kise's separation incorporate by reference the policies and procedures for administration of the AGR program. *See* N.G.R. (A.R.) 600–5, ch. 6 (Feb. 20 1990) *citing* A.R. 135–18, ch. 5–1 (June 19, 1996).[5] Although these federal regulations establish the basis to separate Kise, the authority of the Adjutant General to administer these regulations is an essential element in determining his capacity.

■ The final authority, under the U.S. Army regulations, to order and accomplish an administrative separation of an ARN-GUS member under these circumstances is the State Adjutant General. N.G.R. 600–5, ch. 6–1.a. Furthermore, we find the Opinion of Attorney General Packel, albeit not binding on us, to be insightful and persuasive regarding the source of the Adjutant General's authority. In 1973, the Adjutant General inquired about the authority of the Adjutant General's office to correct the orders of certain National Guard technicians who were assigned to active duty during the Korean War.1973 Op. Atty. Gen. No. 54. Citing the enumerated powers of the Department, now codified at 51 Pa.C.S. § 702(2), the Attorney General advised that such authority did exist. . . .

> Since the Department is charged by the foregoing State law with authority given to the Adjutant General under laws and regulations of the United States, and the

---

**5.** Although Kise's separation is not the result of a court martial, we note that he would not be subject to the federal Uniform Code of Military Justice (U.C.M.J.), but he would be subject to the Pennsylvania Code of Military Justice (Pa.C.M.J.) at 51 Pa.C.S. §§ 5100–6047. *See also id.* § 5102 (Persons Subject

to Pa.C.M.J.) ("This part applies to all members of the State military forces who are not in federal service."); A.R. 135–18, ch. 2–10.b. (June 19, 1996) (stating that Army National Guard personnel on full-time National Guard duty pursuant to Title 32 are subject to the applicable State U.C.M.J.).

Adjutant General is authorized to carry out the duties of the Department, *the Adjutant General is thus authorized by State law to carry out the laws and regulations of the United States.* *Id.* (emphasis added).[6] We conclude, therefore, that the Adjutant General of Pennsylvania was acting as a State official when he separated Kise, a state employee, from the AGR program.

The Department's remaining contention is that Kise's cause of action is based on a federal regulation and, "absent some specific federal legislative grant, jurisdiction of claims, such as this one, resides in the District Courts of the United States." Respondent's Brief at 11. We believe this statement is contrary to the pronouncement of the United States Supreme Court regarding concurrent jurisdiction:

> Under our "system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." *Tafflin [v. Levitt],* 493 U.S., [455] at 458, 110 S.Ct., [792] at 795 [,107 L.Ed.2d 887 (1990)]; *see Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477–478, 101 S.Ct. 2870, 2874–2875, 69 L.Ed.2d 784 (1981); *Claflin v. Houseman,* 93 U.S. 130, 136–137, 23 L.Ed. 833 (1876). To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, af-

firmatively divest state courts of their presumptively concurrent jurisdiction. *Tafflin,* 493 U.S., at 459–460, 110 S.Ct., at 795–796.

*Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820, 823, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990). Neither has the Department provided a citation, nor have we been able to locate such a citation, which would affirmatively divest this Court of jurisdiction in this matter.

This Court has been given jurisdiction to hear all appeals from Commonwealth agencies under Subchapter A of Chapter 7 of Title 2 of Pennsylvania's Administrative Agency Law. 42 Pa.C.S. § 763(a)(1). Kise brings this appeal pursuant to Section 702 of the Administrative Agency Law, which provides for a right to appeal from an adjudication of a Commonwealth agency. 2 Pa.C.S. § 702.[7]

To exercise jurisdiction under the Administrative Agency Law, there must first be an adjudication by a State agency.[8] An adjudication is defined as:

> Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

2 Pa.C.S. § 101. The Pennsylvania National Guard, in its *amicus curiae* brief,

---

**6.** Failure of the Adjutant General to comply with a regulation prescribed under Title 32 may result in the whole or partial debarment of federal money or other aid to the State militia. *See* 32 U.S.C. § 108.

**7.** Kise relies on our opinion in *Prewitt v. Department of Military Affairs,* 686 A.2d 858 (Pa.Cmwlth.1996) to support this assertion. In *Prewitt,* this Court considered the merits of an appeal by a National Guard officer from an order of the Adjutant General of Pennsyl-

vania. *Id.* At issue was whether the Adjutant General should be required to promote the officer pursuant to the Pennsylvania Military Code. *Id. Prewitt* is distinguishable because the matter *sub judice* is the result of the Adjutant General's application of a federal regulation.

**8.** The Department is a State agency and, as our analysis *supra* indicates, the Adjutant General is a State official.

suggests that Kise did not exhaust his administrative remedies by pursuing this matter through the Army Board for the Correction of Military Records (ABCMR). *Amicus* Brief at 19–21 (citing 10 U.S.C. § 1552). We observe, however, that the ABCMR pertains to the correction of military records. The Department does not assert that the ABCMR has jurisdiction to review a final decision of the Adjutant General. As such, we find no merit in the argument that Kise failed to exhaust his administrative remedies. Furthermore, Kise was explicitly informed that the Adjutant General's "decision is final." R.R. at 294a.

■ In addition, we must determine, however, if Kise's personal or property rights were affected. As stated in *Delliponti v. DeAngelis,* 545 Pa. 434, 681 A.2d 1261 (1996):

> An individual employed by a government agency does not enjoy a property right in her employment unless she has an expectation of continued employment. *Guthrie,* 505 Pa. at 256, 478 A.2d at 1282. That expectation may be guaranteed by statute, contract, or be quasi-contractual in nature. *Id.* If the individual has such an expectation, she is entitled to notice and a hearing under Local Agency Law, 2 Pa.C.S. § 553. *Gough v. Borough of Norristown,* 66 Pa.Commw. 401, 444 A.2d 839 (1982). If, however, the individual does not have an expectation of continued employment, she is an at-will employee who does not have a right to a hearing. *Rowe v. Township of Lower Merion,* 120 Pa.Commw. 73, 547 A.2d 880 (1988).

*Id.* at 438–39, 681 A.2d at 1263 (citing *Guthrie v. Borough of Wilkinsburg,* 505 Pa. 249, 478 A.2d 1279 (1984)).

■ We have closely examined N.G.R. 600–5 to determine whether Kise could have a reasonable expectation in continued employment. The regulation neither explicitly states that Kise may only be separated for cause nor does it state that Kise is an at-will participant in the AGR program. There are six chapters contained in the regulation, each addressing a distinct aspect of the program.[9] Chapter six, "Separation", sets forth seven bases for premature separation from the AGR program. These include medical (*e.g.,* physical disabilities from injury or illness), voluntary, mandatory (*e.g.,* enlisted personnel who reach the age 60, failure to obtain/maintain security clearance, conviction by civilian or military authorities), elimination or downgrade of position, retirement, and separation for cause. N.G.R. 600–5, ch. 6. The reasons for a separation for cause are:

(1) Inappropriate professional and personal conduct.

(2) Moral or professional dereliction.

(3) Loss of professional qualifications required for the performance of assigned duties.

(4) Substandard duty performance.

(5) Acts of expressed sentiments of racism, sexism, or prejudice against ethnic or religious groups.

(6) Failure to attain and maintain medical, physical fitness and weight standards.

*Id.* ch. 6–5(c)(1)(7). Upon review of this regulation, we find that a quasi-contract of

---

9. The first and second chapters provide an overview of the program and discuss entry requirements and procedures. The third and fourth chapters discuss career management and professional development of the program participant. Chapter five describes the procedures to be used by the AGR Continuation Boards. Initial tours in the AGR are three years. In the third year, and every fifth year after that, the soldier is reviewed to determine whether he/she meets the requirements for continued participation in the program.

continued employment did exist to the extent that Kise would not be *prematurely terminated* from an initial or continued tour in the AGR program (*i.e.,* separated) unless for cause. Therefore, this Court has jurisdiction to hear the merits of Kise's Petition for Review.

Under the process set forth under N.G.R. 600–5, an involuntary separation for cause recommendation is first made by the soldier's commander or supervisor. This recommendation is then given to the soldier who has 15 days for comments or rebuttal, after which the commander forwards the recommendation to the State Adjutant General.[10] *Id.* ch. 6–5(b). On July 17, 1999, the Commander of the 28th Infantry Division (Mechanized) Support Command (DISCOM) initiated an investigation relating to allegations of Kise's improper sexual relationships in disregard of regulations governing fraternization.[11] Pursuant to Army regulations, the DISCOM Commander appointed an investigating officer (IO) and instructed the IO to follow the *formal* procedures for investigations found in Army Regulation 15–6 (Sept. 30, 1996).[12] R.R. at 4a. After the IO's report, the subordinate DISCOM Commander recommended to the Division Commander that an action to separate Kise for cause be initiated and that an

Administrative Board be convened. *See* Memorandum of Lt. Col. Griffith, Jr. dated December 17, 1999, Oswald Attachment 1.[13] The Division Commander reviewed the recommendation and the IO's report, and concurred with the initiation of a separation action. The DISCOM Commander was advised by the Division Commander, however, that an Administrative Board was not necessary for separation from the AGR program. On January 3, 2000, Kise received a copy of the IO report and in rebuttal he submitted 83 pages of statements and evidence.[14] The Administrative Officer (AO) for DISCOM then sent the recommendation, IO report, and rebuttal documents to the Human Resource Office of the AGR program. *See* Memorandum to SGM Kramer, HRO AGR Manager dated January 22, 2000, Oswald Attachment 1.

Documentation supplied to this Court indicates that Lt. Col. Kane, Judge Advocate, Pennsylvania Army National Guard, then provided a legal review of the separation action, which was communicated to the DISCOM Commander. *See* Memorandum of Lt. Col. Kane dated February 25, 2000, Oswald Attachment 1. Lt. Col. Kane's advice was to separate Kise through a formal board action. Despite

---

**10.** "Adjutant Generals will review all recommendations for separation under this paragraph and will make the final determination." N.G.R. 600–5, ch. 6–5.

**11.** Kise's unit, the 228th Forward Support Battalion, is a subordinate unit of the DISCOM.

**12.** Kise was provided counsel by the Division's Judge Advocate General section.

**13.** On July 18, 2000, the Deputy Chief Counsel submitted the affidavits of the Adjutant General, Maj. Gen. Lynch, and the Human Resources Officer for the Pennsylvania National Guard, Lt. Col. Oswald. The purpose of these affidavits was to explain why a record

could not be certified to this Court. *See infra* p. 264 for a discussion of the reasons. Under the Freedom of Information Act, Lt. Col. Oswald did supply uncertified copies of the Adjutant General's action with forwarding recommendation, subordinate recommendations including legal review, and the results of the A.R. 15–6 investigation with supporting evidence and Kise's rebuttal statement and documents. These documents are collectively referred to as "Oswald Attachment 1."

**14.** Initially, Kise received only a portion of the IO report. On March 6, 2000, he received a complete copy and he was given ten days to submit additional rebuttal statements/evidence.

Lt. Col. Kane's recommendation, Kise was informed on March 16, 2000 by the DIS-COM AO that the AO had recommended involuntary separation for Kise, which did not necessitate formal board action, because of inappropriate professional conduct and moral dereliction. The AO's recommendation was then advanced through the Division Commander to the Adjutant General. On April 25, 2001, Kise was informed that the Adjutant General reviewed and approved the recommendation.

██ Before addressing the merits of Kise's Petition for Review, we must consider the issue of justiciability.[15] In essence, the Department argues that judicial involvement in this matter would amount to "judicial second-guessing of military actions." Respondent's Memorandum of Law at 7 citing *Crawford v. Texas Army National Guard*, 794 F.2d 1034 (5th Cir.1986)(asserting a cause of action under 42 U.S.C. §§ 1983 and 1985(c)). We do not agree. As stated by the Third Circuit Court of Appeals:

> [In] *Dillard*, a woman Guard member who was discharged from the Guard because of a regulation that forbade the enlistment of single parents. She alleged that the Guard had applied the regulation in an unconstitutionally discriminatory manner. The district court had held that this military matter was not reviewable in the civilian courts. This court reversed, holding that suits against the military are non-cognizable in federal court only in the rare case where finding for plaintiff "require[s] a court to run the military." 652 F.2d at 322. We gave as one example, *Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973), in which the plaintiffs asked the court to engage in ongoing regulatory supervision of the Guard. Absent such an extreme case, "[i]f the military justification outweighs the infringement of the plaintiff's individual freedom, we may hold for the military *on the merits*, but we will not find the claim to be non-justiciable." *Dillard*, at 323–24 (emphasis added).

*Jorden v. National Guard Bureau*, 799 F.2d 99, 110–11 (3rd Cir.1986) citing *Dillard v. Brown*, 652 F.2d 316 (3rd Cir.1981). Whether the procedures used by the Pennsylvania Adjutant General deprived a state employee of Constitutional due process is not a question of military expertise or one that causes interference with the military mission. This Court is not being called upon to intrude into any issues of military doctrine or other matters committed to the

---

The Department submitted a consolidated Memorandum of Law in opposition to Kise's Application for Stay and in support of the Department's Motion to Dismiss. A significant portion of the Department's argument is directed toward the justiciability of Kise's Petition. This issue was not stated, however, as a basis for granting the Motion to Dismiss. This issue was not within the scope of review of the Motion to Dismiss because it is separate and distinct from jurisdiction:

> In the instance of *nonjusticiability*, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded. In the instance of lack of *jurisdiction* the cause either does not 'arise under' the Federal Constitution, laws or treaties (or fall within one of the other enumerated categories of Art. III, Sec. 2), or is not a 'case or controversy' within the meaning of that section; or the cause is not one described by any jurisdictional statute.

*Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) (emphasis added); *see also Jubelirer v. Singel*, 162 Pa.Cmwlth. 55, 638 A.2d 352, 357 n. 9 (Pa.Cmwlth.1994). The Department does incorporate the justiciability issue into its brief on the merits by reference, so therefore we will consider this issue with the merits.

expertise of military commanders.[16] Rather, we are asked to determine whether a State agency transgressed the Constitutional rights of one of its employees. 2 Pa.C.S. § 704. The issues on appeal are justiciable.

Kise contends that he was not afforded adequate due process under Pennsylvania's Administrative Agency Law. The DISCOM Commander selected the procedures used to inquire into Kise's conduct after consultation with the Division Commander. The authority of the DISCOM Commander to do so is derived from his status as the "appointing authority" for the inquiry. A.R. 15–6, ch. 1–4.a and ch. 2–1.a. Selection of formal procedures, which provide a soldier with substantially greater due process, is "not mandatory unless required by other applicable regulations or directed by a higher authority."[17] *Id.* ch. 1–4.b.(2). The investigation regulations direct that the minimal procedural safeguards of notice, opportunity to respond in writing and submit rebuttal evidence, and consideration of the soldier's response must be adhered to *unless* the regulations used as the basis for the adverse action (*i.e.,* N.G.R. 600–5) provide similar procedural safeguards. Under N.G.R. 600–5, Kise was furnished with the DISCOM Commander's written recommendation for involuntary separation and he was given the opportunity to comment. Further, the recommendation, IO's report, and Kise's rebuttal were transmitted to the Adjutant General for his consideration.

Kise does not argue that N.G.R. 600–5 merely provides a "floor" for procedural due process. Nor does Kise assert that his interest in continued participation in the AGR program requires additional due process considerations, such as those provided with a formal proceeding. We note the recent concerns of Constitutional due process in AGR separations. *See* John A. Wickham, *The Total Force Concept, Involuntary Administrative Separation, and Constitutional Due Process: Are Reservists on Active Duty Still Second Class Citizens?,* Army Law, 13 (Oct.2000) (discussing *Gonzalez v. United States,* No. 97–526C (Fed.Cl. July 1, 1998) and the "substantial disparity" in due process afforded by the Army to reservists); *Department of Military and Veterans Affairs v. Bowen,* 953 P.2d 888 (Alaska 1998). In *Bowen,* State procedural safeguards were imputed because the National Guard member was an officer. *Bowen,* 953 P.2d at 895. Federal statute requires that "the appointment of an officer of the National Guard may be terminated as provided by the laws of the State .... whose National Guard he is a member...." 32 U.S.C. § 324(b). The State court therefore concluded that State procedural protections were implicated. Unlike Bowen, Kise is an enlisted person. Under the *Bowen* court approach, we turn to the federal statute pertaining to the discharge of enlisted members to determine whether a similar reference to State law exists. It does not. 32 U.S.C. § 322(c) ("In times of peace, an enlisted member of the National Guard may be

---

**16.** In fact, this Court often must consider issues pertaining to "good moral character." *See e.g., Gombach v. Bureau of Commissions, Elections and Legislation,* 692 A.2d 1127 (Pa. Cmwlth.1997).

**17.** The factors to be used in determining whether to select the informal or formal procedures include:

    a) Purpose of the inquiry.

    b) Seriousness of the subject matter.

    c) Complexity of issues involved.

    d) Need for documentation.

    e) Desirability of providing a comprehensive hearing for persons whose conduct or performance of duty is being investigated.

A.R. 15–6, ch. 1–4.b.

discharged before his enlistment expires, under such regulations as may be prescribed by the Secretary of the Army . . . .).

We face a unique set of circumstances: A State agency has applied a federal regulation to a State employee. While federal law does not preempt this Court from hearing this appeal, we are restrained by different principles of preemption. States are preempted from applying additional or different procedures where the federal government has acted to regulate comprehensively, such as the administration of the AGR program. *See* N.G.R. 600–5, ch. 1.1.b. ("Local supplementation of this regulation is not authorized unless approved by the Chief, National Guard Bureau. State memorandums, pamphlets, SOP's, guides, regulations, etc., may not alter the policies in this regulation."); *Carpenters Local 261 Health & Welfare Fund v. National Union Fire Insurance,* 686 A.2d 1373, 1375 (Pa.Cmwlth. 1996); *English v. General Electric Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Therefore, Kise has a property right to continued employment and a Constitutional right to due process under the Fourteenth Amendment. This Court, however, may not impose Pennsylvania's statutory requirements to a due process hearing under 2 Pa.C.S. §§ 501–508.

> The Fourteenth Amendment to the United States Constitution provides that no state shall deprive any person of life, liberty or property without due process of law. The issue of due process rights as they apply to the termination of public employees has been addressed by the United States Supreme Court in the landmark case of *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In *Loudermill,* the Court held that due process requires that a hearing be given to a civil servant who has a property right to continued employment prior to being terminated, regardless of the reason.
>
> The purpose of this hearing is to give the individual being deprived of a property right to continued employment, either by suspension or termination, the opportunity to respond to allegations made against her before she is deprived of that significant property interest. This also allows the public employer the opportunity to correct its action based on any misapprehension of facts that led to its action against the public employee. Because such a hearing is not held to definitively resolve the propriety of the termination but is only to give the terminated employee the opportunity to respond to the allegations against her and to allow the employer to cure a mistaken suspension or discharge, absent any statutory requirement, a full-blown hearing is not required and the employee is not entitled to a full panoply of rights. *Id.* 470 U.S. at 534, 105 S.Ct. at 1489. Only a meeting with the employer or a written notice sent by the employer to the employee setting forth the reasons for her termination and requesting the employee to respond in writing to the allegations is necessary to satisfy the basic due process rights guaranteed by *Loudermill.*

*Pavonarius v. City of Allentown,* 157 Pa. Cmwlth. 116, 629 A.2d 204, 207 (1993). Accordingly, our consideration of due process issues is limited to those under the United States Constitution and N.G.R. 600–5. Kise's arguments rely solely on the due process requirements found in Pennsylvania's Administrative Agency Law, which are not implicated in this appeal.

Kise raises several other issues in his appeal of the Adjutant General's decision. First, Kise contends that the Adjutant

General abused his discretion by failing to address "mandatory" factors that must be explored when contemplating whether to initiate an involuntary separation.[18] N.G.R. 600–5, ch. 6–5.a(2). Kise also asserts that his commander or supervisor failed to counsel or issue a letter of reprimand concerning Kise's alleged misconduct before initiating the separation.[19] N.G.R. 600–5, ch. 6–5.a(1). Kise also challenges the sufficiency and competency of the evidence cited in the IO report and used to demonstrate an improper relationship between Kise and two other soldiers.[20] Moreover, Kise argues that the rules of fraternization did not apply to his relationship with another soldier because she was not in his chain-of-command.

Our ability to address these issues, however, is impaired because the Pennsylvania National Guard has refused to certify and submit a record to this Court in accordance with Pa. R.A.P.1952. The Pennsyl-

vania National Guard, citing the federal Privacy Act, 5 U.S.C. § 552, and the federal Freedom of Information Act, 5 U.S.C. 552, disclosed some documentation, which is generously referred to as a Reproduced Record.[21] *See* letter of Michael C. Barrett dated July 18, 2000 and accompanying Affidavits of Lt. Col. Oswald and Maj. Gen. Lynch, Adjutant General of Pennsylvania. The incomplete record, however, prevents us from conducting an effective appellate review of Kise's claims. For example, there is no mention in the IO's report that a letter of reprimand or counseling was unnecessary. Nor is there any notation to indicate that this requirement was considered.[22] The IO's report also repeatedly states that Kise violated Army regulations and policies governing fraternization, abuse of power, violations of the PMCJ, unprofessional behavior, and misuse of government property, but fails to identify

18. Kise mischaracterizes the language of the regulation. The language clearly states that the "factors *may* be considered."

19. This requirement is excused if "the reason for release would not require such action." N.G.R. 600–5, ch. 6–5.a(1). After reviewing the reasons for involuntary separations, one can imagine a scenario where counseling or a letter of reprimand would not be necessary, for example, the loss of professional qualifications. *Id.* ch. 6–5.c(3).

20. Under the procedures established by A.R. 15–6, the finding of investigations must be supported by a greater weight of evidence which, after considering all evidence presented, points to a particular conclusion as being more credible and probable than any other conclusion. A.R. 15–6, ch. 3–9.b. The weight of evidence is not determined by the quantity produced, but rather the quality, by "evaluating such factors as the witness's demeanor, opportunity for knowledge, information possessed, ability to recall and relate events, and other indications of veracity." *Id.*

21. Contrary to Counsel's suggestion, we are not convinced that the record is limited because there was no proceeding before a Com-

monwealth agency. Respondent's Brief at 8, n. 1. The Adjutant General does not dispute the existence of a more comprehensive record; rather he has limited its disclosure. We surmise that when Lt. Col. Oswald declared that "no record pertaining to SSG Kise's discharge is maintained or possessed by any state employee of the Commonwealth of Pennsylvania" he is inferring that the DISCOM Commander, IO, Division Commander, and all others involved were acting in their federal Army National Guard of the United States (ARNGUS) status rather than in their Pennsylvania Army National Guard (PAARNG) status. Such a conclusion would be contrary to the letterhead and titles used in correspondence and memorandum related to Kise's investigation and discharge.

22. Additionally, Respondent's brief does not address any of the merits of Kise's Petition. The *amicus curiae* brief submitted by the Pennsylvania National Guard, Staff Judge Advocate General attempts to address the merits, but pertaining to this issue, the Guard only states that at all times it was in compliance with N.G.R. 600–5.

the regulations and policies. Moreover, the Adjutant General's basis for separation was Kise's inappropriate professional conduct and moral dereliction. The bases for Kise's separation are not in dispute, however the record fails to define or include a citation to a definition of the bases.[23] Accordingly, we remand this matter to the Department with instructions to supply a more complete record that would permit this Court to conduct an effective appellate review.

We conclude that this Court has jurisdiction over Kise's Petition for Review of the Adjutant General's determination to separate Kise from the AGR program for cause. The record, however, is incomplete. Accordingly, this matter is remanded to the Adjutant General for further proceedings not inconsistent with this Opinion.

The decision in this case was decided prior to Judge Flaherty becoming a senior judge.

### ORDER

AND NOW, this 28th day of September, 2001, the Motion to Dismiss the Petition to Review the involuntary separation of Galen E. Kise from the Active Guard/Reserve program is denied. The decision by the Adjutant General of Pennsylvania to involuntary separate Galen E. Kise is vacated. This matter is hereby remanded for further proceedings not inconsistent with this Opinion.

Jurisdiction relinquished.

PELLEGRINI, Judge, Dissenting.

I respectfully dissent from the majority's decision because this Court lacks jurisdiction to hear the matter.

Galen E. Kise (Kise) was an enlisted member of the National Guard on full-time active federal service pursuant to 32 U.S.C. § 502(f) as part of the Active Guard/Reserve (AGR) program from June 16, 1985, until his discharge for misconduct on May 31, 2000. After he was notified of the pending discharge, he filed a petition for review with this Court regarding the decision of the Department of Military and Veterans Affairs (Department) and the Adjutant General to involuntarily separate him from the AGR program. The Department filed a motion to dismiss, arguing that this Court lacked jurisdiction to hear the matter because the Adjutant General's determination was a federal action under federal regulation to dismiss a federal employee. The majority disagrees, finding that this Court has jurisdiction to hear the matter but that the record is incomplete for a proper review of the issues raised by Kise and remands the case for further proceedings. I disagree with the majority that we may hear this case because this is not an appeal from a Commonwealth agency but rather an appeal by a federal employee from a decision of a federal agency.

Although the majority concludes that Kise was a state employee because he was a member of the National Guard in the AGR program and, therefore, was a member of the state militia and not a soldier in

---

**23.** The recommendation of separation Kise received from the AO stated, in part:

> Your lack of honesty, sound judgement and moral dereliction is not in keeping with the values and ethics expected of a professional soldier. Values are what soldiers, as a profession, judge to be right. They are moral, ethical and professional attributes of character.

R.R. at 193a. What are the expected values and ethics that Kise violated? It is apparent that Kise's behavior violated the "values and ethics of a professional soldier" by a matter of degrees because he lost his full-time National Guard job, but is still in the part-time National Guard. See Brief of *Amicus Curiae* at 14; 32 U.S.C. § 502(a).

the United States Army, it overlooks that Kise was on full-time active federal service pursuant to 32 U.S.C. § 502(f), a federal statute; he was paid by the federal government; he wore the uniform of the United States Army and was subject to the military's direction and control; and the AGR program is instituted by, administered by and subject to the direction of the federal government. Further, the investigation into Kise's misconduct was conducted pursuant to the provisions of a Department of the Army regulation, AR 15-6. This is relevant because, not only is there evidence that this is a federal matter, but regardless of what this court orders, we cannot force the federal government to pay for or approve Kise's active duty status. Courts should not enter orders they cannot enforce.

Not only do I disagree with the majority decision because it says that we have jurisdiction over someone serving on active duty status, I would still disagree if only state money was involved, and the Adjutant General was making his decision solely as a state officer. Serving in the National Guard is not like being an employee for PennDot or the State Police; it is still serving in the military, and courts do not interfere in military decisions. By making the Administrative Agency Law applicable to the National Guard, what it does is "civilianize" the National Guard by making Adjutant General decisions involving active duty members "employment status" or, for that matter, other similar decisions subject to judicial review. At the end of the day, we have to recognize that normal civilian principles do not translate well to the National Guard. It is neither a "job" nor an employment "opportunity" nor are we expending our treasury so that troops can parade; the National Guard is being prepared to wage war, involving killing and dying. If the military believes that Kise's

misconduct means that he should not serve, we should not interfere.

Accordingly, I dissent.

Judge LEADBETTER joins in this dissenting opinion.